UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>KENNETH PONTZ,<br><br>Defendant. | Criminal No. 22-30021-MGM |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO VACATE CONVICTION
(Dkt. No. 172)
June 18, 2025

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

On June 16, 2022, a federal grand jury returned an indictment charging Defendant, Kenneth Pontz, with one count of Theft of Government Property, in violation of 18 U.S.C. § 641, based on his receipt of approximately $63,871 in Social Security disability payments to which he was not entitled between May 2014 and June 2020.[1] Violations of § 641 are subject to a five-year statute of limitations, and Defendant moved for dismissal of the indictment "insofar as it allege[d] criminal conduct occurring prior to June 16, 2017." (Def.'s Mot. to Dismiss, Dkt. No. 30, 1.) The government opposed, arguing Defendant could be charged for receiving excess Social Security payments as far back as May 2014 because embezzlement under § 641 is a "continuing offense," as established in *Toussie v. United States*, 397 U.S. 112 (1970). In the absence of binding precedent from the First Circuit, this court denied the motion, joining several judges in the District of Massachusetts

---

[1] "One of the methods of theft covered by § 641 is embezzlement." *United States v. Pontz*, 132 F.4th 10, 24 (1st Cir. 2025). An embezzlement occurring over a series of transactions may be charged as multiple offenses or in a single count covering the continuing scheme. *Id.*; *see also* 18 U.S.C. § 641.

1

who had previously ruled theft of Social Security benefits in violation of § 641 is a "continuing offense." *United States v. Daley*, 537 F.Supp.3d 116, 119 (D. Mass. 2021).

The case proceeded to trial and the jury found Defendant guilty of one count of theft of government money. (Jury Verdict, Dkt. No. 82.) Separately, the jury found the amount of his theft was greater than $1,000, which rendered his crime a felony.[2] *Id.*; *United States v. Pontz*, 132 F.4th 10, 24 (1st Cir. 2025). The court sentenced Defendant to ten months of incarceration, to be followed by three years of supervised release, and ordered him to pay $49,898.00 in both restitution and forfeiture. (Am. Jment, Dkt. No. 162.) The amount of restitution was calculated based on evidence the government provided after trial concerning the exact amount Defendant's Social Security benefits were overpaid during the period covered by the indictment—May 2014 through June 2020.

Defendant appealed his conviction, challenging certain evidentiary rulings made at trial, and the court's ruling that embezzlement of SSA disability payments is a continuing offense for purposes of applying the statute of limitations. The First Circuit affirmed this court's evidentiary rulings, but ruled that embezzlement under § 641 is not a continuing offense. The First Circuit vacated the earlier restitution and forfeiture awards, because they included amounts the Social Security Administration ("SSA") overpaid Defendant prior to June 16, 2017. However, finding the issue insufficiently briefed, the First Circuit did not rule on the continued validity of Defendant's conviction. Instead, the First Circuit remanded the case to this court "for further proceedings consistent with [its] opinion."[3] *Pontz*, 132 F.4th at 33.

On remand, Defendant has moved for his conviction to be vacated. The court denies the motion for the reasons that follow.

---

[2] A conviction under § 681 is a felony if the loss from a single count or multiple counts combined in a single case exceeds $1,000. 18 U.S.C. § 681; *see also Pontz*, 132 F.4th at 24.

[3] Pursuant to Local Rule 40.1(l), and the terms of the remand, the case remains with the original judge for further proceedings consistent with the First Circuit's decision. *See, Pontz*, 132 F.4th at 32-33.

II.     THE TRIAL

At the time of trial, the government sought to prove that (1) Defendant intentionally provided the SSA with incorrect information about his household and finances in order to (2) knowingly and willfully collect benefits he was not entitled to receive, and (3) the amount of excess benefits he received between May 2014 and June 2020 exceeded $1,000. Defense counsel's strategy focused on raising questions about Defendant's knowledge and intent, as well as the actual amount of the government's loss. Basic facts, such as where Defendant lived, his marital status, and the types of benefits he and his wife received, were undisputed.

For example, the government presented uncontroverted evidence about two different types of disability benefits paid by the SSA: Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI"). SSDI payments are paid to individuals who become disabled after participating in the workforce, and benefit amounts are based on the recipient's earnings history. 42 U.S.C. § 423. SSI benefits are available to certain low-income individuals and the amount paid each month is based on the applicant's need and other available financial resources. 42 U.S.C. § 1382. Undisputed evidence also established that Defendant lived with his wife, Lisa, in a trailer she owned at Lot 32 at 370 Mill Valley Road in Belchertown, Massachusetts ("Lot 32") between 2004 and their separation in June 2020. During those years, Lisa received SSDI payments, and Defendant received SSI payments.

Defense counsel did contest the accuracy of certain records the SSA created when Defendant applied for SSI benefits in 2004. One of the disputed documents stated Defendant told an SSA employee he lived alone at Lot 32. When Defendant was found eligible for SSI benefits, the SSA sent him a letter notifying him that his monthly benefits would be $340.39. The notice also explained the benefit amount was based on information he provided to the SSA, including that he was living alone. The SSA advised Defendant he was required to report any changes that could

impact his eligibility or the amount of his benefits, such as if he stopped living alone. Defendant also received an informational booklet containing similar warnings about the requirement that SSI recipients immediately report any household or financial changes to the SSA. The jury saw evidence of annual letters sent to Defendant by the SSA, notifying him about cost-of-living adjustments and reminding him to report any changes to his household or financial situation.

In 2014, the SSA conducted an eligibility redetermination for Defendant. SSA records documented Defendant's answers to questions posed during an interview with an SSA employee. He reported that he was married, but lived alone in Warwick, Massachusetts from 2009 until 2014, then at Lot 34 at 370 Mill Valley Road, Belchertown, Massachusetts ("Lot 34") beginning in early 2014. Defendant also stated that he paid $710 per month in rent. After the interview, he provided the SSA with a handwritten rent receipt showing a $725 rent payment for Lot 34. Defendant did not report his wife's SSDI income. Following the eligibility redetermination, the SSA notified Defendant he was eligible to receive $721 each month. With cost-of-living increases, the monthly payment had increased to $783 by the beginning of 2020. There was no evidence that Defendant notified SSA regarding any changes to his household or financial situation between the 2014 eligibility redetermination and June 2020.

The government presented evidence that Lot 34 was actually vacant. The jury also heard testimony from a state government employee,[4] who described statements Defendant made to her, under penalty of perjury, between 2017 and 2020, including that he lived with Lisa at Lot 32, and paid either $150 or $250 in rent. In October 2019, he also gave the employee a document showing that Lisa was receiving $1,107 in SSDI benefits each month. A different witness testified that she lived with Defendant and his wife for about six months between 2015 and 2016. During that time, she said she paid Defendant $300 for rent each month. Evidence from these witnesses helped the

---

[4] The state government employee was a parole officer, but care was taken to prevent the jury from learning that information.

4

government prove Defendant intentionally provided incorrect information to the SSA in 2014, but did not show how those incorrect statements impacted the amount of SSI benefits Defendant received.

For that, the government relied on the notices the SSA sent to Defendant and testimony from Luis Aguayo, a "claims technical expert" employed by the SSA. Despite Aguayo's significant technical knowledge, the government did not disclose him as an expert. As a result, the government could only question Aguayo as a lay witness. His testimony about the loss amount was limited to: (1) stating that if Defendant had reported living with his with spouse, that information could have affected the amount of SSI benefits he received or his eligibility to receive benefits; (2) the effect would have been to "significantly reduce the amount paid" to Defendant; (3) Defendant's spouse's income, including her SSDI benefits, would have reduced the SSI benefits paid to Defendant; and (4) Defendant's spouse was receiving no less than about $100 per month in SSDI benefits.[5]

Aguayo's limited testimony complicated the government's case. Rather than point to a specific loss calculation greater than $1,000, the government argued the total loss over the 73-month period described in the indictment would have exceeded $1,000 if the SSA overpaid Defendant's SSI benefits by just $14 per month. Defendant's misrepresentations, however, involved much larger sums: (1) Lisa's monthly SSDI payment was based on her past work history, and was $1,107 in 2019; (2) Defendant inflated his rent expenses by around $500 per month; and (3) Defendant did not notify the SSA when he received $300 per month in rental income for about six months during 2015 and 2016. In contrast, Defense counsel reminded the jury there was no evidence about the exact amount the SSA overpaid Defendant's SSI benefits, and urged them to conclude the government had not met its burden of proof as to the loss amount.

---

[5] Although Aguayo was not permitted to testify about how much Lisa received in SSDI benefits each month, there was evidence that, in 2019, Defendant had provided an SSA document to his probation officer showing that Lisa was receiving $1,107 in SSDI each month.

III.  DISCUSSION

The jury's verdict had two parts. First, the jury found Defendant guilty of theft of government money based on his receipt of SSI benefits between May 2014 and June 2020. Separately, the jury found the amount Defendant "stole, embezzled, or converted to his use or the use of another" during that time was more than $1,000. (Jury Verdict, Dkt. No. 82.) On remand, Defendant argues neither part of the jury's verdict can survive because the jury considered conduct that occurred more than five years before the indictment was issued. The government contends Defendant waived his right to challenge his conviction by conceding that appellate success on the statute of limitations issue would only impact the calculation of restitution. Alternatively, the government asserts there is no legal basis for vacating the conviction because (1) the indictment sufficiently alleged a violation of § 641 between June 16, 2017 and June 2020, and (2) there is no support for Defendant's argument that a truncated indictment would have altered the jury's verdict.

A. Waiver

The court sentenced Defendant to ten months in the custody of the Bureau of Prisons and three years of supervised release. Defense counsel filed a motion asking the court to stay Defendant's sentence during the pendency of his appeal. At a hearing on January 24, 2024, the court asked defense counsel whether he agreed that, at best, success on appeal would result in a new sentencing rather than a new trial. Counsel replied:

> Well, I don't think that's true. I will agree with [the government] that, with respect to the statute of limitations issue, which is the issue of first impression that it may be, that issue would only impact the restitution amount. I accept that.
> But I think the other two points that I raised . . . would very likely result in a new trial.

(Jan. 24, 2024 Hr'g Trans., Dkt. No. 134, 22).

The Court understood this to be a concession, tactically phrased on one point, as a way to highlight the strength of other arguments. This concession recognized and repeated defendant's legal analysis of the case facts in a way which was consistent with his original motion to dismiss the indictment only "insofar as it alleges criminal conduct occurring prior to June 16, 2017" (Def.'s Mot. to Dismiss, Dkt. No. 30, 1). *See Pontz*, 132 F.4th at 32.

The precise wording used, when only read on a transcript, does not definitively establish waiver, but the court also has the benefit of recalling the more ephemeral characteristics of the exchange like tone, argumentative emphasis, body language and overall presentation. At the time of the hearing the Court formed the clear impression that Counsel intended and made the type of "'explicit and specific concession' [that] constitutes waiver." *United States v. Lasanta-Sanchez*, 681 Fed. Appx. 32, 35 (1st Cir. 2017) (quoting *United States v. Torres-Rosario*, 658 F.3d 110, 116 (1st Cir. 2011)). Further, even if the court were to reach a different conclusion regarding waiver, vacating the conviction is not an appropriate remedy in this case.

B.  Indictment and Verdict

The court turns next to the appropriate remedy for the improper inclusion of untimely transactions in the scheme described in the indictment and submitted to the jury. Although the First Circuit agreed with Defendant that the government "could only charge him for a crime that occurred on or after June 16, 2017," it did not adopt the "prosecute-it-or-lose-it" approach suggested in *United States v. Yashar*, 166 F.3d 873 (7th Cir. 1999). *Pontz*, 132 F.4th at 31 n. 16. This means the government was permitted to charge Defendant for the crimes completed when he received excess SSI payments after June 16, 2017, even though he could not be prosecuted for crimes completed before that date.

7

Relying on the First Circuit's statute of limitations ruling, Defendant argues his conviction should be vacated because inclusion of untimely transactions in the indictment constituted a "fatal defect." This argument is without merit. The indictment's reference to payments made between 2014 and 2017 did not alter the legal sufficiency of the indictment as to the payments from 2017 through 2020. All elements of a § 641 offense were included, and the indictment conveyed the information necessary to defend against the charge, and any future prosecution for the same conduct. *United States v. Laureano-Pérez*, 797 F.3d 45, 60 (1st Cir. 2015) ("An indictment is legally sufficient if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." (quotations omitted)).

The introduction of evidence related to the payments Defendant received outside the limitations period also does not warrant vacating the conviction. For example, had there been a variance in this case, as "'occurs when the government relies at trial on different facts than those alleged in the indictment to prove the same offense,'" reversal would only be appropriate if the variance was prejudicial. *Pontz*, 132 F.4th at 32 n. 18 (quoting *United States v. Katana*, 93 F.4th 521, 530 (1st Cir. 2024)). A variance is only prejudicial if it (1) deprives the defendant of knowledge necessary "to prepare an effective defense and avoid surprise at trial," or (2) impairs "the right to prevent a second prosecution for the same offense.'" *Id.* (quotations omitted). As the First Circuit has already determined, "under a prejudicial variance analysis, if the government had proceeded to prove at trial a scheme from 2017 to 2020 instead of 2014 to 2020, it would have 'add[ed] nothing new to the grand jury's indictment' but rather established 'a significantly narrower and more limited, though included, fraudulent scheme.'" *Id.* at 32 (quoting *United States v. Mubayyid*, 658 F.3d 35, 50 (1st Cir. 2011)).

Defendant also was not prejudiced by the government's efforts to prove the violation of § 641, and a loss amount greater than $1,000, without evidence of the SSA's overpayment calculation. The amount of SSI benefits is determined based on a recipient's housing situation and financial resources. At trial, evidence from multiple sources supported a finding that Defendant intentionally provided the SSA with incorrect evidence about his household and finances. Of greatest significance was the evidence that Defendant did not tell the SSA he was living with Lisa, who received SSDI benefits of more than $1,000 per month in 2019, and never less than about $100. Without that information, the SSA incorrectly determined Defendant was eligible to collect a higher amount of SSI benefits than he was actually entitled to receive.[6] The jury also heard evidence that when the SSA set the amount of Defendant's SSI benefits, it believed his monthly rent expenses were $725, or about $500 higher than the rent he actually paid. Finally, there was evidence that for about six months in 2015 and 2016, Defendant was receiving $300 in rental income that he did not disclose to the SSA.

As this court previously ruled—a reasonable jury could easily determine that over the 73-month period set out in the original indictment, the SSA's cumulative loss exceeded $1,000. Dividing that figure by 73 months results in a minimum monthly loss of just under $14, an amount dwarfed by the hundreds of dollars in discrepancies between the information Defendant gave the SSA and his true financial status. On remand the court must disregard the temporary rent payments Defendant received in 2015 and 2016 and divide $1,000 by a shorter period of months. The abbreviated period requires the government's proof establish a monthly loss of no less $27.78.[7] The

---

[6] Although the language Aguayo used, and found in the SSA notices and pamphlet, stated only that changed living situations and financial resources affect SSI payments, the First Circuit observed that "[t]here is no serious argument that Pontz's SSI benefit amount would increase or stay the same, rather than decrease, had he reported another source of household income." *Pontz*, 132 F.4th at 22.

[7] Based on language in *Pontz* and *United States v. Askia*, 893 F.3d 1110 (8th Cir. 2018), the government has included May 2017 in its loss calculation because the overpayment that month was less than $1,000 and could not have been charged as a felony unless combined with another overpayment. Dividing $1,000 by 37 months results in a minimum monthly benefit reduction of $27.03 per month. If only a 36-month period is used, the

new minimum monthly loss amount is an increase over the smaller amount needed under the 73-month timeframe described in the indictment, but the amount remains insignificant in comparison to the evidence supporting the jury's conclusion that the cumulative loss amount exceeded $1,000. At trial, the jury heard and saw evidence that Defendant's erroneous statements to the SSA enabled him to conceal hundreds of dollars of household income and inflate his household's expenses by hundreds more dollars, each and every month. Based on that evidence, the court concludes no reasonable jury could have found a loss in excess of $1,000 for the full, 73-month timeframe listed in the indictment, but not for the shorter period permitted under the statute of limitations.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Vacate Conviction (Dkt. No. 172) is denied. The court will set a schedule for the parties to brief the appropriate amount of forfeiture and restitution consistent with First Circuit's ruling.

It is So Ordered.

    /s/ Mark G. Mastroianni  
MARK G. MASTROIANNI  
United States District Judge

---

minimum monthly loss amount is $27.78. Since the difference between the two figures is minuscule, the court uses Defendant's calculation without deciding which period is correct.